Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address

REILLY D. WILKINSON (SBN: 250086)
SCHEER LAW GROUP, LLP
155 N. REDWOOD DRIVE, SUITE 100
SAN RAFAEL, CA 94903
(415) 491-8900
(415) 491-8910
Email: rwilkinson@scheerlawgroup.com

FOR COURT USE ONLY

☐ Individual appearing without attorney
☒ Attorney for: CAM XVIII TRUST, its successors and/or assignees

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

In re:
ALFREDO DE JESUS SANCHEZ,

CASE NO.: 2:17-bk-17822-SK

CHAPTER: 13

**APPLICATION FOR ORDER SETTING
HEARING ON SHORTENED NOTICE
[LBR 9075-1(b)]**

Debtor(s).

1. Movant applies under LBR 9075-1(b) for an order setting a hearing on shortened notice on the following motion:

   a. Title of motion: MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (WITH SUPPORTING DECLARATIONS) REGARDING REAL PROPERTY

   b. Date of filing of motion: 6/30/2017

2. Compliance with LBR 9075-1(b)(2)(A): (*The following three sections must be completed*):

   a. Briefly specify the relief requested in the motion:

   - Pursuant to 11 U.S.C. § 362(d)(4), Debtor's filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved: 1) The transfer of all or part ownership of, or other interest in, the subject Property without the consent of Movant or court approval; and 2) Multiple bankruptcy filings affecting the Property.
   - Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows: 1) Payments are not being made to Movant; 2) An interest in the Property was allegedly trasferred to the Debtor in bankruptcy solely to avoid a pending foresclosure; and 3) This is at least the 10th bankruptcy pending and affecting the Property.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b.   Identify the parties affected by the relief requested in the motion:

Debtor, ALFREDO DE JESUS SANCHEZ
Borrower, HECTOR MARTINEZ
Chapter 13 Trustee, KATHY DOCKERY
U.S. Trustee
Co-Debtors: Juan Perez, Jose Chavez, Lorena Aranda De Chavez, Francisco Valdez, Maria N Luna, Miguel
Sanchez, Agustin Martinez Resendez, Laura Ivonne Santoyo, Jose Lazaro Chavez, Salvador M Salinas

c.   State the reasons necessitating a hearing on shortened time:

Movant is seeking In Rem relief to avoid any future transfers and/or bankruptcy filings affecting the Property.  It is
likely that before this matter can be heard, the Borrower, Co-Debtors and/or the Debtor will file another bankruptcy
or transfer an interest of the Property to another party in bankruptcy in a bad faith effort to frustrate Lender.  This is
at least the 10th bankruptcy filing affecting the Property in the  Borrower transferred an interest of the Property to at
least nine (9) different individuals. All of the Warranty Deeds were allegedly executed to individuals who had filed
for bankruptcy immediately prior to the alleged execution of the Warranty Deeds. Movant obtained In Rem relief in
a previous bankruptcy filing on May 21, 2015 in case 2:14-bk-33495-SK. Further, due to the numerous
bankruptcies and transfers of interest of the Property, Lender is seeking In Rem relief pursuant to 11 U.S.C. § 362
(d)(4) so that any future bankruptcies will not affect the Property.

Please see attached continuation page.

3.   Compliance with LBR 9075-1(b)(2)(B): The attached declaration(s) justifies setting a hearing on shortened notice, and
establishes a *prima facie* basis for the granting of the motion.

See Real Property Declaration of KARIN MURPHY attached hereto as Exhibit "1".

4.   Movant has lodged a proposed Order Setting Hearing on Shortened Notice on mandatory form F 9075-1.1.ORDER
.SHORT.NOTICE


Date: 6/29/2017

SCHEER LAW GROUP LLP
Printed name of law firm


/s/ Reilly D. Wilkinson
Signature of individual Movant or attorney for Movant

REILLY D. WILKINSON
Printed name of individual Movant or attorney for Movant

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**F 9075-1.1.APP.SHORT.NOTICE**

# PART 2.c. CONTINUATION PAGE

Due to the numerous bankruptcies and stall tactics on the part of the Borrower, Lender was forced to restart the foreclosure.  By the time Lender was again at the point of sale, the previous In Rem Order was no longer effective and Borrower agon transferred an interest in the Property to a Debtor in bankruptcy.  Lender received notice of the transfer and bankruptcy on June 28, 2017.  Under the Court's procedures, the next available date in which the motion can be heard is August 2, 2017.  If Lender is forced to wait until August 2, 2017 to have the motion heard,  the Borrower will most likely take more steps to fraudulently stall Lender from pursuing its rights.

Lender had no knowledge of, nor gave any authorization for, the transfers described above, as further detailed in the Real Property Declaration of KARIN MURPHY attached hereto as Exhibit "1".

This type of conduct is likely to continue unless an order is entered binding on the Property immediately that prevents this type of "bad faith" behavior.  The Court's first available hearing on regular notice is August 2, 2017. The Court's only available hearings in July are July 5, 2017 and July 12, 2017. Movant requests that a hearing be held as soon as possible to avoid additional delay by Borrower, Debtor or any third parties and the possibility of another fraudulent transfer or bankruptcy filing.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) _____ Karin Murphy _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☒ I am employed by Movant as (*state title and capacity*):

   I am a _____ AVP _____ of BSI. BSI has Power of Attorney to sign

   c. ☒ Other (*specify*): on behalf of Movant, which held a secured lien on the subject property. A copy of the Limited Power of Attorney is attached hereto as Exhibit 1. BSI is also the servicer of the subject loan.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached*):

3. The Movant is:

   a. ☒ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit  2  .

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit  3 & 4 .

   c. ☐ Servicing agent authorized to act on behalf of the:
      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 3240 Castalia Avenue
   *Unit/suite no.*:
   *City, state, zip code*: Los Angeles, CA 90032

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
   Document Recording No. 20071503463, Los Angeles County

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT " \ "

5. Type of property (*check all applicable boxes*):

   a. ☒ Debtor's principal residence      b. ☐ Other residence
   c. ☐ Multi-unit residential            d. ☐ Commercial
   e. ☐ Industrial                        f. ☐ Vacant land
   g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   On June 28, 2017, Movant through its foreclosure trustee received notice of this bankruptcy filing and transfer ("BK Notice").Hector Martinez is the original borrower on the loan secured by the subject Property ("Original Borrower"). Original Borrower and Juan Perez allegedly transferred the subject Property to Debtor without Lender's authorization or knowledge.  A copy of the BK Notice is attached hereto as Exhibit "5" and incorporated herein by reference.

   b. ☒ Co-owner(s) (*specify*):

   c. ☐ Lienholder (*specify*):

   d. ☐ Other (*specify*):

   e. ☒ The Debtor ☐ did  ☒ did not  list the Property in the Debtor's schedules.

   f. ☒ The Debtor acquired the interest in the Property by ☒ grant deed ☐ quitclaim deed ☐ trust deed.

   The deed was recorded on (*date*) 06/27/2017  .

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
   that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit 3     .

   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 2     .

   c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit 4     .

8. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 699,789.94 |
| b. | Accrued interest: | $ | $ | $ 381,844.50 |
| c. | Late charges | $ | $ | $ 31,578.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 12,379.62 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 130,752.91 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of (*date*): 6/28/2017 | $ | $ | $ 1,256,344.97 |

   h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

   a. Notice of default recorded on (*date*) 02/17/2017   or ☐ none recorded.

   b. Notice of sale recorded on (*date*) 06/01/2017   or ☐ none recorded.

   c. Foreclosure sale originally scheduled for (*date*) 06/28/2017   or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for (*date*) 07/12/2017   or ☐ none scheduled.

   e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

   f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                Page 7                          F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit _____ is a true and correct copy of a **POSTPETITION** statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

    a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

    b. Number of payments that have come due and were not made: _____. Total amount: $_____

    c. Future payments due by time of anticipated hearing date (*if applicable*):

        An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

    d. The fair market value of the Property is $_____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other (*specify*):

    **e. Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ | | | |

    f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other (*specify*):

    g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

    h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                              Page 8                              **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☒ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

   a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: __08/04/2017__.
   A plan confirmation hearing currently scheduled for (or concluded on) the following date: __08/31/2017__.
   A plan was confirmed on the following date *(if applicable)*: _____.

   b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

Motion is being brought due to bad faith allegations.

(See attachment for additional breakdown of information attached as Exhibit _____.)

   c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

   d. Postpetition advances or other charges due but unpaid:                    $
   *(For details of type and amount, see Exhibit _____)*

   e. Attorneys' fees and costs:                                                $
   *(For details of type and amount, see Exhibit _____)*

   f. Less suspense account or partial paid balance:              $[                    ]

          TOTAL POSTPETITION DELINQUENCY:            $

   g. Future payments due by time of anticipated hearing date *(if applicable)*: _____.
   An additional payment of $_____ will come due on _____, and on
   the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
   charge of $_____ will be charged to the loan.

   h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
   applied (if applicable):
   $_____    received on *(date)* _____
   $_____    received on *(date)* _____
   $_____    received on *(date)* _____

   i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
   A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
   13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT.TRUSTEE)*.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 9                              **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (date) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (date) _____, which is ☐ prepetition ☐ postpetition.

17. ☒ The bankruptcy case was filed in bad faith:

   a. ☒ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☒ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☒ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☒ Other (specify):
      See attached Continuation Page, Transfer of Property to Debtor in bankruptcy.


18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☒ Multiple bankruptcy cases affecting the Property include:

      1. Case name: JUAN PEREZ
        Chapter: 7     Case number: 2:14-bk-33495-SK
        Date dismissed: 10/19/2015      Date discharged: _____   Date filed: 12/22/2014
        Relief from stay regarding the Property ☒ was ☐ was not granted.

      2. Case name: JOSE CHAVEZ and LORENA ARANDA DE CHAVEZ
        Chapter: 7     Case number: 14-32390-CMK
        Date dismissed: _____   Date discharged: 03/21/2017   Date filed: 12/29/2014
        Relief from stay regarding the Property ☒ was ☐ was not granted.

      3. Case name: FRANCISCO VALDEZ
        Chapter: 13     Case number: 2:14-bk-26524-VZ
        Date dismissed: 10/27/2014      Date discharged: _____   Date filed: 08/28/2014
        Relief from stay regarding the Property ☐ was ☒ was not granted.

☒ See attached continuation page for information about other bankruptcy cases affecting the Property.

☒ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

06/30/17                         Karin Murphy
_____                   _____              _____
Date                             Printed name                        Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## CONTINUATION PAGE TO LENDER DECLARATION

4.      Case name: MARIA LUNA      Chapter: 7
        Case number:  1:13-bk-17494-VK    Date dismissed: 12/18/2013   Date discharged: n/a
        Date filed: 12/02/2013

        Relief from stay re this Property was not granted.

5.      Case name: MIGUEL SANCHEZ     Chapter: 7
        Case number:  1:13-bk-16108-AA    Date dismissed: 10/07/2013   Date discharged: n/a
        Date filed: 09/19/2013

        Relief from stay re this Property was not granted.

6.      Case name: AGUSTIN MARTINEZ RESENDEZ     Chapter: 7
        Case number:  2:13-bk-11209-RK   Date dismissed: 05/16/2013   Date discharged: n/a
        Date filed: 01/15/2013

        Relief from stay re this Property was not granted.

7.      Case name: LAURA IVONNE SANTOYO     Chapter: 7
        Case number:  1:12-bk-11125-VK   Date dismissed:   Date discharged: 6/6/2012
        Date filed: 02/06/2012

        Relief from stay re this Property was not granted.

8.      Case name: JOSE LAZARO CHAVEZ and SUSANA RAMOS   Chapter: 13
        Case number:  12-18154-WRL    Date dismissed: 06/24/2013   Date discharged: n/a
        Date filed: 09/25/2012

        Relief from stay re this Property was not granted.

9.      Case name: SALVADOR M. SALINAS   Chapter: 7
        Case number:  2:10-bk-64913-ER   Date dismissed: 12/10/2011   Date discharged: n/a
        Date filed: 12/27/2010

        Relief from stay re this Property was not granted.

## CONTINUATION PAGE TO LENDER DECLARATION

1.      On June 27, 2017, Debtor filed a Petition under Chapter 13 of the Bankruptcy Code.

2.      Debtor is not a borrower on the loan secured by the subject Property which is the subject of this Declaration and Motion for Relief from the Automatic Stay.   This motion relates to the real Property located at 3240 Castalia Avenue, Los Angeles, CA 90032 ("**Property**").

3.      HECTOR MARTINEZ ("**Borrower**") is the borrower on the Note and owner of the Property, as specified in the Note and Deed of Trust.

4.      Lender had originally filed its Notice of Default on February 17, 2017 and had originally scheduled its foreclosure sale to take place on June 28, 2017 ("**Sale**").   As a result of this bankruptcy, the Sale has been continued until July 12, 2017.

5.      On the morning of June 28, 2017, the day that the Sale was scheduled to take place, Lender was informed by the foreclosure trustee that a facsimile transmission was received earlier that same day that provided notice of the unauthorized transfer, which supposedly affected the Property ("**BK Notice**").   According to the BK Notice in Lender's file, on or about June 19, 2017, Borrower allegedly executed a Grant Deed transferring the subject Property to the Debtor.  This transfer was done without Lender's knowledge or authorization. The Grant Deed was recorded on June 27, 2017.  A copy of the BK Notice including all attachments is attached as Exhibit "5".

6.      Borrower has transferred an interest in the Property at least nine (9) times and there are at least ten (10) bankruptcy filings affecting the subject Property.  A description of the unauthorized transfers and previous bankruptcy filings is as follows:

**First Bankruptcy**

On or about December 27, 2010, Borrower allegedly executed a Quitclaim Deed transferring the subject Property to the SALVADOR SALINAS ("**First Transferee**").  This transfer was done without Lender's knowledge or authorization.  The Quitclaim Deed was recorded on December 27, 2010.  A copy of the Quitclaim Deed is attached as Exhibit "6".

On October 11, 2011, First Transferee filed a Petition under Chapter 13 of the Bankruptcy Code, Case No. 2:10-bk-64913-ER ("**First Bankruptcy**"). The case was converted to Chapter 7 on January 11, 2011. The case was dismissed on December 10, 2011. A copy of the Dismissal Order is attached hereto as Exhibit "7."

**Second Bankruptcy**

On or about February 28, 2012, Borrower allegedly executed a Quitclaim Deed transferring the subject Property to the LAURA SANTOYO ("**Second Transferee**"). This transfer was done without Lender's knowledge or authorization. The Quitclaim Deed was recorded on February 28, 2012. A copy of the Quitclaim Deed is attached as Exhibit "8".

On February 2, 2012, Second Transferee filed a Petition under Chapter 13 of the Bankruptcy Code, Case No. 1:12-bk-11125-VK ("**Second Bankruptcy**"). The case was converted to Chapter 7 on February 24, 2012. The case was discharged on June 6, 2012. A copy of the Discharge Order is attached hereto as Exhibit "9."

**Third Bankruptcy**

On or about July 7, 2011, Borrower allegedly executed a Quitclaim Deed transferring the subject Property to the JOSE CHAVEZ ("**Third Transferee**"). This transfer was done without Lender's knowledge or authorization. The Quitclaim Deed was recorded on July 8, 2011. A copy of the Quitclaim Deed is attached as Exhibit "10".

On September 25, 2012, Third Transferee filed a Petition under Chapter 13 of the Bankruptcy Code, Case No. 12-18154-WRL ("**Third Bankruptcy**"). The case was dismissed on June 24, 2013. A copy of the Dismissal Order is attached hereto as Exhibit "11."

**Fourth Bankruptcy**

On or about January 15, 2013, Borrower allegedly executed a Grant Deed transferring the subject Property to the AGUSTIN MARTINEZ RESENDEZ ("**Fourth Transferee**"). This transfer was done without Lender's knowledge or authorization. The Grant Deed is not recorded. A copy of the Grant Deed is attached as Exhibit "12".

On January 15, 2013, Fourth Transferee filed a Petition under Chapter 7 of the Bankruptcy Code, Case No. 2:13-bk-11209-RK ("**Fourth Bankruptcy**"). The case was dismissed on May 16, 2013. A copy of the Dismissal Order is attached hereto as Exhibit "13."

**Fifth Bankruptcy**

On or about December 18, 2012, Borrower allegedly executed a Short Form Deed of Trust and Assignment of Rents transferring the subject Property to the MIGUEL SANCHEZ ("**Fifth Transferee**"). This transfer was done without Lender's knowledge or authorization. The Short Form Deed of Trust and Assignment of Rents was recorded Ocotber 2, 2013. A copy of the Short Form Deed of Trust and Assignment of Rents is attached as Exhibit "14".

On September 19, 2013, Fifth Transferee filed a Petition under Chapter 7 of the Bankruptcy Code, Case No. 1:13-bk-16108-AA ("**Fifth Bankruptcy**"). The case was dismissed on October 7, 2013. A copy of the Dismissal Order is attached hereto as Exhibit "15."

**Sixth Bankruptcy**

On or about December 18, 2012, Borrower allegedly executed a Short Form Deed of Trust and Assignment of Rents transferring the subject Property to the MARIA LUNA ("**Sixth Transferee**"). This transfer was done without Lender's knowledge or authorization. The Short Form Deed of Trust and Assignment of Rents is not recorded. A copy of the Short Form Deed of Trust and Assignment of Rents is attached as Exhibit "16".

On December 2, 2013, Sixth Transferee filed a Petition under Chapter 7 of the Bankruptcy Code, Case No. 1:13-bk-17494-VK ("**Sixth Bankruptcy**"). The case was dismissed on December 18, 2013. A copy of the Dismissal Order is attached hereto as Exhibit "17."

**Seventh Bankruptcy**

On or about January 15, 2013, Borrower allegedly executed a Grant Deed transferring the subject Property to the FRANCISCO VALDEZ ("**Seventh Transferee**"). This transfer was done without Lender's knowledge or authorization. The Grant Deed is not recorded. A copy of the Grant Deed is attached as Exhibit "18".

On August 28, 2014, Seventh Transferee filed a Petition under Chapter 13 of the Bankruptcy Code, Case No. 2:14-bk-26524-VZ ("**Seventh Bankruptcy**"). The case was

1  dismissed on October 27, 2014.  A copy of the Dismissal Order is attached hereto as Exhibit

2  "19."

3  **Eighth Bankruptcy**

4          On or about December 14, 2014, Borrower allegedly executed a Grant Deed

5  transferring the subject Property to the JUAN PEREZ ("**Eighth Transferee**").  This transfer was

6  done without Lender's knowledge or authorization.  The Grant Deed was recorded on February

7  5, 2015.  A copy of the Grant Deed is attached as Exhibit "20".

8          On October 11, 2011, Eighth Transferee filed a Petition under Chapter 13 of the

9  Bankruptcy Code, Case No. 2:14-bk-33495-SK ("**Eighth Bankruptcy**").  On April 9, 2015

10  Lender filed a Motion for Relief from Stay due to bad faith based on an unauthorized transfer

11  and multiple bankruptcy cases affecting the Property. On May 21, 2015, Lender obtained In Rem

12  relief pursuant to 11 U.S.C. 362 (d) (4) in the Previous Bankruptcy.  A copy of the In Rem Relief

13  Order ("**In Rem Order**") is attached hereto as Exhibit "21."

14  **Ninth Bankruptcy**

15          On December 29, 2014, Third Transferee filed a Petition under Chapter 13 of the

16  Bankruptcy Code, Case No. 14-32390-CMK ("**Ninth Bankruptcy**").  The case was converted to

17  Chapter 7 on September 20, 2016.  On January 29, 2016, Lender filed a Motion for Relief from

18  Stay.  On March 2, 2016, Lender obtained relief from stay in the Ninth Bankruptcy.  A copy of

19  the Relief Order is attached hereto as Exhibit "22."

20          7.      On October 24, 2016, due to the fact that foreclosure was commenced

21  prior to 2013, Lender had to restart the foreclosure process.  Further, due to the numerous grant

22  deeds, Lender spent much time and effort locating and contacting all parties who received

23  fraudulent grant deeds relating to the Property.  By the time Lender was able to set the

24  foreclosure for sale again, the previous In Rem Order was no longer effective and then this

25  current bankruptcy was filed.

26          8.      It appears that Borrower's unauthorized transfers of the Property, previous

27  bankruptcy filings and this bankruptcy filing were part of a scheme to delay, hinder, or defraud

28  Lender and other creditors.  Lender is seeking In Rem relief to avoid any future bankruptcy

1   filings affecting the Property and preventing Lender or any third party purchaser from moving

2   forward with its rights to take possession of the Property.

3         I declare under penalty of perjury under the laws of the United States of America

4   that the foregoing is true and correct and that this Declaration was executed on

5   June 30 , 2017 , at Irving , TX (city, state).

6

7   Signature:

8   Print Name: Karin Murphy, AVP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

Prepared by:
CAM XVIII Trust
2015 Manhattan Beach Blvd
Suite 100
Redondo Beach, CA 90278

When recorded return to:
BSI Financial Services
1425 Greenway Drive, Suite 400
Irving, TX 75038

### LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is made in connection with that certain Sub-Servicing or Servicing Agreement by and between HMC Assets, LLC solely in its capacity as Separate Trustee of CAM XVIII Trust (the "Owner") and Servis One, Inc. a Delaware corporation, licensed as Servis One, Inc. in Florida and licensed as Servis One, Inc. d/b/a/ BSI Financial Services, in all other jurisdictions in which business is conducted (the "Servicer") dated as of April 14, 2016 (the "Servicing Agreement").

Owner hereby makes, constitutes and appoints Servicer for Owner's benefit and in Owner's name, place, and stead, as Owner's true and lawful attorney-in-fact, with full power of substitution, to act in any manner necessary and proper to exercise the servicing and administrative powers set forth in the Servicing Agreement with respect to those loans and REO properties the servicing for which has been transferred to the Servicer pursuant to the terms of the Servicing Agreement. Such powers include the authority to execute the following documents:

1. Mortgage and trust deed assignments;
2. Note endorsements and allonges;
3. Substitutions of trustee;
4. Deeds of conveyance (including, without limitation, warranty deeds, grant deeds and quitclaim deeds);
5. Trust deed reconveyance and mortgage release documents;
6. Partial releases and subordination agreements;
7. Affidavits (including, without limitation, lost note affidavits, military affidavits and affidavits of indebtedness);
8. Powers of attorney (i) concerning any process related to effecting a lien release upon payment of a loan in full, or (ii) used to process any foreclosure, bankruptcy or other related activity concerning a loan in default;
9. HUD-1 settlement statements;
10. Endorsement of insurance claim proceeds checks;
11. Insurance claims and filings;
12. Approved, standard hold harmless agreements regarding payment of property insurance proceeds to Servicer for the benefit of the Owner or to the Owner;
13. Documents in connection with any bankruptcy (including, without limitation, Bankruptcy Declaration in support of Motions for Relief from Stay);



EXHIBIT " / "

14. Contracts and purchase agreements for sale of real estate;
15. Settlement agreements, consent judgments, stipulated dismissals, stipulations and releases, as may be necessary; and
16. All other normal and customary documents related to the foreclosure and/or sale of real estate.

Owner gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the limited power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and does hereby ratify and confirm to all that this Limited Power of Attorney is effective as of the date hereof.

Owner will not be responsible for inspection of any items being executed pursuant to this Limited Power of Attorney and as such, is relying upon the Servicer to undertake whatever procedures may be necessary to confirm the accuracy of such items.

Any third party may rely upon a copy of this Limited Power of Attorney, to the same extent as if it were an original, and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes of this Limited Power of Attorney.

Servicer shall not be obligated to furnish a bond or other security in connection with its actions hereunder. Servicer hereby agrees to indemnify and hold Owner and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by Servicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Servicing Agreement.

Owner authorizes Servicer, by and through any of its directors or officers, or any other employee who is duly authorized by Servicer to certify, deliver and/or record copies and originals of this Limited Power of Attorney. Servicer's employees executing such documents in the name of Owner necessary to properly service and administer mortgage loans must hold the office of Document Executing Officer or Assistant Vice President or higher.

If any provision of this Limited Power of Attorney shall be held invalid, illegal or unenforceable, the validity, legality or enforceability of the other provisions hereof shall not be affected thereby. This Limited Power of Attorney is entered into and shall be governed by the laws of the State of Texas without regard to conflicts of law principles of such state.

[Signature page follows]

2

IN WITNESS WHEREOF HMC Assets, LLC solely in its capacity as Separate Trustee of CAM XVIII Trust, as Owner has caused this Limited Power of Attorney to be executed by its duly authorized representative as of September 16, 2016.

**HMC Assets, LLC solely in its capacity**
**as Separate Trustee of CAM XVIII Trust,**

Name: Gary McCarthy
**Title: Member of HMC Assets, LLC, as Administrator**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

---

State of **California**            ) ss
County of **Los Angeles**       )

On **09/16/2016** before me **Diana Ly** Notary Public, personally appeared **Gary W. McCarthy**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify UNDER PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

DIANA LY
Notary Public - California
Los Angeles County
Commission # 2106638
My Comm. Expires Apr 12, 2019

Notary Signature

[Notary Seal]

3

Case 2:17-bk-17822 Filed 06/30/19 of 94    72

Prepared by: SARKIS MAMBREIAN

LOAN #:

# InterestOnly<sup>SM</sup> ADJUSTABLE RATE NOTE

**(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JUNE 05, 2007                    SANTA ANA                    CALIFORNIA
[Date]                            [City]                        [State]

3240 CASTALIA AVENUE, LOS ANGELES, CA 90032-2173
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 700,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
Countrywide Home Loans, Inc. dba America's Wholesale Lender
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.125   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment on the   first         day of every month, beginning on   AUGUST 01, 2007       . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on    JULY 01, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 4,156.25         before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)(d)                         Page 1 of 4                    Initials:



LOAN #:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the `first` day of `JULY, 2017`, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding `TWO & ONE-QUARTER` percentage points ( `2.250` %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than `12.125` % or less than `2.250` %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than `12.125` %.

### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes
Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of `FIFTEEN` calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be `5.000` % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

LOAN #:

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

T

LOAN #:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
HECTOR MARTINEZ                                      -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower

*[Sign Original Only]*

PAY TO THE ORDER OF
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC., A NEW YORK CORPORATION
DOING BUSINESS AS AMERICA'S WHOLESALE LENDER

BY: _____
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

CONV
● MULTISTATE Interest Only ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
2D805-XX (04/03)                          Page 4 of 4

Prepared by: SARKIS MAMBREIAN

**Countrywide Home Loans, Inc. dba America's Wholesale Lender**

DATE:            06/05/2007
BORROWER: HECTOR MARTINEZ
CASE #:
LOAN #:
PROPERTY ADDRESS: 3240 CASTALIA AVENUE
                 LOS ANGELES, CA 90032-2173

Branch #:
55 SOUTH LAKE AVENUE #150
PASADENA, CA 91101
Phone: (626)431-2555
Br Fax No.: (877)585-3376

# PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated   JUNE 05, 2007            , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to
Countrywide Home Loans, Inc. dba America's Wholesale Lender
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.

If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term during which my payments consist of interest as well as during the time that my monthly payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)(d/l)                        Page 1 of 2

LOAN #:

    If within the first TWELVE months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note.  Interest will be calculated using the rate in effect at the time of prepayment.

All other terms and conditions of the above referenced Note remain in full force and effect.

_____     Borrower
HECTOR MARTINEZ

_____     Borrower

_____     Borrower

_____     Borrower

● Multistate Prepayment Penalty Addendum
1E296-XX (09/06)                          Page 2 of 2

  

**This page is part of your document - DO NOT DISCARD**



**20071503463**  Pages: 028

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/22/07 AT 08:00AM**

Fee: 91.00
Tax: 0.00
Other: 0.00
Total: 91.00

**Title Company**

# TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**    **Number of AIN's Shown**

    E3423H    **THIS FORM IS NOT TO BE DUPLICATED**    

*10706879-5*

UNITED TITLE COMPANY/L.A.

Recording Requested By:
G. NORTON

6/22/07

20071503463

After Recording Return To.
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
SARKIS MAMBREIAN

5218-019-010

——————— [Space Above This Line For Recording Data] ———————

09079144                    00016856779006007
[Escrow/Closing #]          [Doc ID #]

# DEED OF TRUST

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  JUNE 05, 2007          , together with all Riders to this document.
**(B) "Borrower"** is
HECTOR MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP -6A(CA) (0207)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc (800)521-7291          Form 3005  1/01
CONV/VA



* 2 3 9 9 1 *



DOC ID #: 0001685677 9006007

Borrower's address is

3465 LIBERTY, SOUTH GATE, CA 90280

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is

Countrywide Home Loans, Inc. dba America's Wholesale Lender

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

**(D) "Trustee"** is

ReconTrust Company, N.A

225 West Hillcrest Dr., MSN TO-02, Thousand Oaks, CA 91360

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated   JUNE 05, 2007          . The Note states that Borrower owes Lender

SEVEN HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 700,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JULY 01, 2037          .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | [X] 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | [X] Other(s) [specify] |
| | | LEGAL DESCRIPTION |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii)

-6A(CA) (0207)      CHL (08/05)      Page 2 of 16      Form 3005 1/01

escription: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 3 of 28
rder: 126T Comment:

DOC ID #: 00016856779006007

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY        of            LOS ANGELES
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 5218-019-010                    which currently has the address of
3240 CASTALIA AVENUE, LOS ANGELES
[Street/City]

California 90032-2173 ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including,

VMP® -6A(CA) (0207)          CHL (08/05)          Page 3 of 16          Form 3005 1/01

ORDER NO   10706879-5

**EXHIBIT "A"**

LOT 144 OF TRACT NO. 3479, IN THE CITY OF LOS ANGELES,
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP
RECORDED IN BOOK 38 PAGE (S) 48 AND 49 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

-3-

DOC ID #: 0001685677900607

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Description: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 6 of 28
Order: 126T Comment:

DOC ID #: 0001685677900607

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Description: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 7 of 28
Order: 126T Comment:



DOC ID #: 0001685679006007

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

escription: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 8 of 28
rder: 126T Comment:

DOC ID #: 0001685677900607

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00016856779006007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Description: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 10 of 28
Order: 126T Comment:

DOC ID #: 0001685677900607

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 0001685677900G007

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00016856779006007

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

| | | | |
|---|---|---|---|
| -6A(CA) (0207) | CHL (08/05) | Page 11 of 16 | Form 3005 1/01 |

DOC ID #: 0001685677900607

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 0001685677 9006007

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

escription: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 15 of 28
rder: 126T Comment:

*16*

DOC ID #: 00016856779006007

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

escription: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 16 of 28
rder: 126T Comment:

17

DOC ID #: 0001685677906007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
HECTOR MARTINEZ                                          -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

07 1503463

Description: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 17 of 28
Order: 126T Comment:

*18*

DOC ID #: 00016856779006007

State of California
County of Los Angeles                                } ss.

On 6-5-2007 _____ before me, _Jaime Gallardo, Notary Public,_
_____ personally appeared
_Hector R. Martinez_____
_____
_____
_____
_____
_____ , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Jaime Gallardo_     (Seal)

JAIME GALLARDO
COMM. # 1696065
NOTARY PUBLIC, CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Sept. 26, 2010

07 1503463

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:

COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By.

SARKIS MAMBREIAN

09079144          00016856779006007
[Escrow/Closing #]      [Doc ID #]

**MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 5

-57R (0411)      CHL (11/04)(d)                      Initials: _____
VMP Mortgage Solutions, Inc. (800)521-7291              Form 3170 1/01



*  23991  *

DOC ID #: 0001685679006007

THIS 1-4 FAMILY RIDER is made this FIFTH day of
JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given
by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Home Loans, Inc. dba America's Wholesale Lender

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:
3240 CASTALIA AVENUE, LOS ANGELES, CA 90032-2173

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to
the Property to the extent they are fixtures are added to the Property description, and shall also
constitute the Property covered by the Security Instrument· building materials, appliances and
goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used
in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water
closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings,
storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors,
cabinets, paneling and attached floor coverings, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security
Instrument. All of the foregoing together with the Property described in the Security Instrument (or
the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family
Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in
writing to the change  Borrower shall comply with all laws, ordinances, regulations and
requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any
lien inferior to the Security Instrument to be perfected against the Property without Lender's prior
written permission

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition
to the other hazards for which insurance is required by Section 5.

Initials:

VMP®-57R (0411)        CHL (11/04)        Page 2 of 5        Form 3170 1/01

DOC ID #: 0001685679006007

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Section 19 is deleted

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

G. ASSIGNMENT OF LEASES. Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION. Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until· (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant, (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph

-57R (0411)    CHL (11/04)    Page 3 of 5    Initials: _____    Form 3170 1/01

DOC ID #: 0001685677906007

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

VMP®-57R (0411)      CHL (11/04)          Page 4 of 5                          Initials:
                                                                              Form 3170 1/01

escription: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 22 of 28
rder: 126T Comment:

23

DOC ID #: 00016856779006007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider

_____ (Seal)
HECTOR MARTINEZ                                        - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

_____ (Seal)
                                                      - Borrower

VMP® -57R (0411)      CHL (11/04)        Page 5 of 5               Form 3170 1/01

Assessor's Parcel Number

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By
SARKIS MAMBREIAN

Recording Requested By:

——————————— [Space Above This Line For Recording Data] ———————————

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

09079144                    00016856779006007
[Escrow/Closing #]          [Doc ID #]

CONV
● MULTISTATE  FIXED/ADJUSTABLE  RATE  RIDER - WSJ  One-Year  LIBOR - Single  Family
   INTEREST ONLY
1U796-XX (06/04)(d)            Page 1 of 5                    Initials:

* 2 3 9 9 1 *

DOC ID #: 0001685677900 6007

THIS FIXED/ADJUSTABLE RATE RIDER is made this FIFTH                 day of
JUNE, 2007          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
Countrywide Home Loans, Inc. dba America's Wholesale Lender

("Lender") of the same date and covering the property described in the Security Instrument and
located at

3240 CASTALIA AVENUE
LOS ANGELES, CA 90032-2173
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of        7.125 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:
**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first              day of JULY, 2017           , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date "
**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in *The Wall Street Journal* The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER              percentage points (     2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                  Page 2 of 5                    Initials

DOC ID #: 0001685677900607

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.125 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.125 %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)              Page 3 of 5                     Initials:

Description: Los Angeles,CA Document - Year.DocID 2007.1503463 Page: 26 of 28
Order: 126T Comment:

27

DOC ID #: 0001685677900 6007

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows.

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                         Page 4 of 5                         Initials.

DOC ID #: 00016856779006007

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____(Seal)
HECTOR MARTINEZ                                         -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5



**This page is part of your document - DO NOT DISCARD**



# 20101085511



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/05/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



201008050140008

00002765456



002817019

**SEQ:**
**14**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

T46

Description: Los Angeles,CA Document - Year.DocID 2010.1085511 Page: 1 of 2
Order: 126T Comment:



EXHIBIT "4"

RECORDING REQUESTED BY:

RECONTRUST COMPANY

**AND WHEN RECORDED MAIL DOCUMENT**

**AND TAX STATEMENTS TO:**

RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063



08/05/2010

*20101085511*

TS No. 10-0082022

TSG# 10-8-336828

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 06/05/2007, EXECUTED BY:
HECTOR MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, TRUSTOR: TO RECONTRUST
COMPANY, N.A, TRUSTEE AND RECORDED AS INSTRUMENT NO. 20071503463 ON 06/22/2007, OF OFFICIAL
RECORDS IN THE COUNTY RECORDER'S OFFICE OF LOS ANGELES COUNTY, IN THE STATE OF
CALIFORNIA.

DESCRIBING THE LAND THEREIN:  AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: JUL 2 0 2010                    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: **CALIFORNIA**        )    BY: _____
County of: **VENTURA**          )    T. Sevillano, Assistant Secretary
                                          AHMAD AFZAL
On JUL 2 7 2010 before me, _____, notary public, personally appeared
_____ T.Sevillano _____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____  (Seal)
         AHMAD AFZAL

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

Form asgnmnt (01/09)

**This page is part of your document - DO NOT DISCARD**

# 20120695313





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/09/12 AT 12:30PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201205090840361

00005762678



003970948

**SEQ:**
**01**

**ERDS - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E534011

E13

Recording Requested By:
**Bank of America**
Prepared By:  Bank of America
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
**800-444-4302**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**



DocID#    15516856779012445

Property Address:
**3240 Castalia Ave**
**Los Angeles, CA 90032-2173**

CA0-ADT  17991209          5/1/2012

MIN #:                                        This space for Recorder's use

MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:                **COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER**
Original Borrower(s):        **HECTOR MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY**
Original Trustee:              **RECONTRUST COMPANY, N.A.**
Date of Deed of Trust:      **6/5/2007**
Original Loan Amount:      **$700,000.00**

Recorded in Los Angeles County, CA on: 6/22/2007, book N/A, page N/A and instrument number 20071503463

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

5-2-12

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: *Cynthia Romo*

Cynthia Romo, Assistant Secretary

State of California
County of **Ventura**

On **MAY 0 2 2012** _____ before me, _____ **Linda J. Stone** _____, Notary Public, personally appeared
_____ Cynthia Romo _____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____ *Linda J. Stone* _____        (Seal)
My Commission Expires: _____ *October 2, 2015* _____

LINDA J. STONE
Commission # 1954842
Notary Public - California
Los Angeles County
My Comm. Expires Oct 2, 2015

**This page is part of your document - DO NOT DISCARD**



# 20151511656





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/02/15 AT 04:33PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201512023310045

**00011411714**



007240626

**SEQ:**
**01**

**ERDS - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E635543

NBFN352388.2

Prepared By:
PROF-2013-S3 Legal Title Trust, by U.S. Bank
National Association, as Legal Title Trustee
60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN
55107, Attention: Structured Finance Services
WHEN RECORDED RETURN TO:
Avenue 365 Lender Services
401 Plymouth Rd, Ste. 550
Plymouth Meeting, PA 19462

Parcel # 5218-019-010

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned, **BANK OF AMERICA, N.A., S/B/M BAC HOME LOANS
SERVICING, L.P. F/K/A COUNTRYWIDE HOME LOANS SERVICING, L.P.,** located at **1800 Tapo
Canyon Road, Simi Valley, California 93063** ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to:
**PROF-2013-S3 Legal Title Trust, by U.S. Bank National Association, as Legal Title Trustee,** located at **60
Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107, Attention: Structured Finance
Services**("ASSIGNEE/GRANTEE") all beneficial interest under that certain **DEED OF TRUST,** dated 6/5/2007
and executed by **HECTOR MARTINEZ, A MARRIED MAN AS HIS SOLE AN SEPARATE PROPERTY,**
borrower(s) to: **Mortgage Electronic Registration Systems, Inc., as nominee for COUNTRYWIDE HOME
LOANS, INC. DBA AMERICA'S WHOLESALE LENDER,** its successors and assigns, as original lender, and
certain instrument recorded 6/22/2007, in **INSTRUMENT NO. 20071503463,** in the Official Records of **LOS
ANGELES** County, the State of California, given to secure a certain Promissory Note in the amount of
**$700,000.00** covering property located at: **3240 CASTREETALIA AVENUE, LOS ANGELES, CALIFORNIA
90032.**

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due
thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have
reconveyed, in whole or in part, the real property described therein.

Dated: November 10th, 2015

ASSIGNOR:BANK OF AMERICA, N.A., S/B/M BAC HOME
LOANS SERVICING, L.P. F/K/A COUNTRYWIDE HOME
LOANS SERVICING, L.P. By: Avenue 365 Lender Services,
LLC, its attorney-in-fact*

By:_____

Name:  Clinton Casabella

Title:  Authorized Signatory

*Power of Attorney recorded in Maricopa County, Arizona as
Instrument: 20150617207

State of : Pennsylvania

County of : Montgomery

Before me, **Robert J. Mahon,** duly commissioned Notary Public, on this day personally appeared **Clinton Casabella, Authorized Signatory for Avenue 365 Lender Services, LLC, attorney-in-fact BANK OF AMERICA, N.A., S/B/M BAC HOME LOANS SERVICING, L.P. F/K/A COUNTRYWIDE HOME LOANS SERVICING, L.P.** known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this **10th** day of **November, 2015.**

COMMONWEALTH OF PENNSYLVANIA
```
NOTARIAL SEAL
ROBERT J MAHON
Notary Public
EAST NORRITON TWP, MONTGOMERY CNTY
My Commission Expires Oct 7, 2017
```

_____
Notary Public's Signature

**Printed Name: Robert J. Mahon**

**My Commission Expires: 10.07.2017**

Property Address:3240 CASTREETALIA AVENUE, LOS ANGELES, CALIFORNIA  90032        Original
Loan Amount: $700,000.00

 **This page is part of your document - DO NOT DISCARD** 

## 20160929622





**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/08/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



**201608080190027**

**00012455187**


**007721000**

**SEQ:**
**03**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

a 1404114695

E521948



Recoding Requested by and
When recorded mail to:
HMC Assets, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Document prepared by: Sharon Chase
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**Assignment of Deed of Trust**

For value received, the undersigned hereby grants, assigns and transfers to

CAM XVIII Trust

All beneficial interest under that certain Deed of Trust dated 6/5/2007 executed by
HECTOR MARTINEZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY,
Trustor (s) to Mortgage Electronic Registration Systems, Inc., as Nominee for
Countrywide Home Loans, Inc. dba America's Wholesale Lender, as Beneficiary, and
recorded on 6/22/2007 as Instrument No. 20071503463 of Official Records, in the office
of the County Recorder of Los Angeles County, State of CA, together with the
Promissory Note secured by said Deed of Trust and also all rights accrued or to
accrue under said Deed of Trust and Note.

Property Address:  3240 Castalia Ave, Los Angeles, CA 90032

Dated

7/29/16                PROF-2013-S3 Legal Title Trust by U.S. Bank National
                       Association, as Legal Title Trustee
                       By: Servis One, Inc. DBA BSI Financial Services,
                       as its Attorney in Fact

                       By: _____
                       NAME: Kristy Bliss
                       TITLE: Assistant Vice President Loan Administration

STATE OF        PENNSYLVANIA
COUNTY OF       CRAWFORD

On this, the _____ day, of July 2016, before me, Stephanie L. Donovan, a
Notary Public, the undersigned officer, personally appeared Kristy Bliss, known to
me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she executed the same for
the purposes therein contained

In witness hereof, I hereunto set my hand and official seal.

_____
Notary Public

Printed Name: Stephanie L. Donovan
My Commission Expires  8/10/2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Stephanie L. Donovan, Notary Public
City of Titusville, Crawford County
My Commission Expires Aug. 10, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

THIS DOCUMENT IS FILED FOR RECORD
BY TITLE 365
AS AN ACCOMMODATION ONLY. IT HAS NOT
BEEN EXAMINED AS TO ITS EXECUTION
OR AS TO ITS EFFECT UPON THE TITLE.

# Fax Cover Sheet

| | |
|---|---|
| Date: | June 27, 2017 |
| Pages following: | 4 |
| To: | June |
| Company: | Entra Default Solutions, LLC |
| Fax Number: | 925-933-6017 |
| Phone Number | 714-730-8300 |
| From: | Dolores Iracheta |
| Regarding: | TS No. 2016-03912 |
| | 3240 Castalia Avenue |
| | Los Angeles, CA 90032 |
| Comments | Dear June: |
| | Attached please find the BK paper and Grant Deed |
| | For property and trustee sale mentioned above. |
| | Thank you and have a Bless Day!! |

If you have any questions regarding the transmitted
Please contact sender at  Cell (323) 841-5592 Fax 323-221-0283
E-mail:  maria.iracheta@yahoo.com

EXHIBIT " 5 "

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s)
listed below was filed under Chapter 13 of the
United States Bankruptcy Code, entered on
06/27/2017 at 3:04 PM and filed on
06/27/2017.

**Alfredo De Jesus Sanchez**
3240 Castalia Ave
Los Angeles, CA 90032
SSN / ITIN: xxx-xx-7996

The bankruptcy trustee is:

**Kathy A Dockery (TR)**
700 S. Flower Street, Suite 1950

Los Angeles, CA 90017
(213) 996-4400

The case was assigned case number 2:17-bk-17822-SK to Judge Sandra R.
Klein.

In most instances, the filing of the bankruptcy case automatically stays certain
collection and other actions against the debtor and the debtor's property.
Under certain circumstances, the stay may be limited to 30 days or not exist at
all, although the debtor can request the court to extend or impose a stay. If you
attempt to collect a debt or take other action in violation of the Bankruptcy
Code, you may be penalized. Consult a lawyer to determine your rights in this
case.

If you would like to view the bankruptcy petition and other documents filed
by the debtor, they are available at our *Internet* home page
www.cacb.uscourts.gov or at the Clerk's Office, 255 East Temple Street,, Los
Angeles, CA 90012.

https://ecf.cacb.circ9.dcn/cgi-bin/NoticeOfFiling.pl?1793184          6/27/2017

6/28/2017  8:58 AM  FROM: 818G9793OG                  TO: 19265665180        P.   3

This page is part of your document - DO NOT DISCARD

# 20170712825





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/27/17 AT 02:52PM**

| | |
|---|---|
| FEES: | 25.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 25.00 |



**L E A D S H E E T**



201706273330041

00013906412



008422845

**SEQ:**
**01**

DAR - Counter (Upfront Scan)

THIS FORM IS NOT TO BE DUPLICATED

E533809

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL THIS DEED TO:

NAME   Hector Martinez

STREET
ADDRESS   3240 Castalia Ave

CITY &
STATE
ZIP   Los Angeles, CA 90032

TITLE ORDER NO.   ESCROW NO,

APN. 5218-019-010


06/27/2017
*20170712825*

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARES(S):

DOCUMENTARY TRANSFER TAX Is $___0___ County $_____City (no consideration due, release of co-signer interest.)

☐ computed on full value of property conveyed, or

☐ computed on full value less value of liens or encumbrances remaining at time of sale. Or

☒ transfer is EXEMPT from tax for the following reason:  "This is a bonafide gift and grantor received nothing in return R&T 11911."

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Hector Martinez and Juan Perez**

Heraby grants to Hector Martinez and Alfredo De Jesus Sanchez

All that Real property in the City Of WINDSOR,  County of  Los Angeles State of California, described as: *Exhibit "A"*

IS A BONIFIDE GIFT AND GRANTOR RECEIVED NOTHING IN RETURN R&T 11911"          "THIS

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE Of California
OF Los Angeles          COUNTY  } S.S.

On 06-19 2017, before me, CARINA N. HENRY

personally appeared, HECTOR MARTINEZ JUAN PEREZ

who proved to me on the basis of satisfactory

evidence  to be the person(s) whose names is / are  subscribed to

the within instrument and acknowledged to me that he / she / they

executed  the same in  his / her / their authorized capacity (ies), and

that by his / her / their signature(s) on the instrument the person (s)

or the entity upon behalf of which the person(s) acted, executed

the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of

California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary Public

_____
Hector Martinez

_____
Juan Perez

CARINA N HENRY
Commission # 1817266
Notary Public - California
Riverside County
My Comm. Expires Oct 12, 2018

EXHIBIT "A"


LOT 144 OF TRACT NO 3479. IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 38, PAGES 48 AND 49 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.



### This page is part of your document - DO NOT DISCARD



## 20101916108

Pages:
0002

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/27/10 AT 11:52AM**

| | |
|---|---|
| FEES: | 19.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 19.00 |



**L E A D S H E E T**



SEQ:
03

DAR - Counter (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E 117204

**EXHIBIT " 6 "**

**RECORDING REQUESTED BY**

Jimmy Alvarez

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name    California Sky Premier, LLc
Street    3550 Wilshire Blvd # 1725
Address
City &    Los Angeles, Ca 90010
State
Zip

Title Order No.            Escrow No.



12/27/2010

*20101916108*

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

# Quitclaim Deed

THE UNDERSIGNED GRANTOR (S) DECLARE (S)

DOCUMENTARY TRANSFER TAX IS $ 0

☐ unincorporated area   ☑ City of Los Angeles

Parcel No. 5216-019-010

☐ computed on full value of interest or property conveyed, or

☑ computed on full value less value of liens or encumbrances remaining at time of sale, and

        **FOR A VALUABLE CONSIDERATION,**   receipt of which is hereby acknowledged,

Hector Martinez, grantor,

hereby REMISE, RELEASE AND FOREVER QUITCLAIM to

Hector Martinez and Salvador M Salinas, grantee(s)

"This is a Bonafie gift and the grantor recieved nothing in return."

the following described real property in the city of Los Angeles

County of Los Angeles                   , state of California

Described as follows: Lot 144, of Tract No. 479, in the city of Los Angeles, County of Los Angeles, State of california as per map recorded in book 12, page 43, of maps in the office of the county recorder of said county.

Dated 12-27-2010

STATE OF CALIFORNIA
COUNTY     OF         Los Angeles

On 12-27-2010                 before me,

Jimmy Alvarez, a notary public,

       (here insert name and title of the officer)

, personally appeared Hector Martinez

Hector Martinez

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies); and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature

**JIMMY ALVAREZ**
Commission # 1861886
Notary Public - California
Los Angeles County
My Comm. Expires Aug 20, 2013

(This area for official notarial seal)

**MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE**

Name                           Street Address                        City & State

# United States Bankruptcy Court
## Central District Of California

**255 East Temple Street, Los Angeles, CA 90012**

## ORDER AND NOTICE OF DISMISSAL FOR FAILURE TO APPEAR AT 341(a) MEETING OF CREDITORS

**DEBTOR INFORMATION:**
Salvador M Salinas

**BANKRUPTCY NO.** 2:10-bk-64913-ER

**CHAPTER** 7

Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any):  xxx-xx-7821
Employer Tax-Identification (EIN) No(s).(if any):  N/A
Debtor Dismissal Date: 12/10/11

**Address:**
911 East Mauna Loa Ave
Azusa, CA 91702

The above debtor(s) has **FAILED TO APPEAR** for examination at the initial Section 341(a) meeting of creditors and any continuance thereof:

It is ordered:

1)    The case is dismissed, the automatic stay is vacated, and all pending motions and adversary proceedings are moot and dismissed.

2)    Any discharge entered in this case is hereby vacated in its entirety.

3)    The Court retains jurisdiction on all issues arising under Bankruptcy Code § 110, 329 and 362.

Dated: December 10, 2011

For The Court,
**Kathleen J. Campbell**
Clerk of Court

(Form van23a-odmwab VAN-23) Rev. 11/09

**50 / LRL**


EXHIBIT "7"

RECORDING REQUESTED BY
HECTOR MARTINEZ
3240 CASTALIA AVE.
LOS ANGELES, CA 90032



And When Recorded Mail Tax Statements To:

Title Order  Escrow
No.     No.     (space above for recorder's use only)
*******************************************************************

### QUITCLAIM DEED

*The undersigned Grantor(s) Declare(s)*
*DOCUMENTARY TRANSFER TAX is $0*
    *Assessor's Parcel No. 5218-019-010*
    _____ *unincorporated area* _X_ *CITY OF LOS ANGELES*
    _____ *computed on full value of property conveyed, or*
    _X_ *computed on full value less value of liens or*
    *encumbrances remaining at time of sale, and*

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
HECTOR MARTINEZ, grantor

    hereby REMISES, RELEASES AND FOREVER QUITCLAIMS to
HECTOR MARTINEZ & LAURA SANTOYO, grantee(s)

*"THIS IS A BONAFIDE GIFT, AND THE GRANTOR RECEIVED NOTHING IN RETURN: R&T 11911" -*
*No Consideration Given.*

the following described real property in the CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, DESCRIBED AS FOLLOWS: SEE ATTACHED EXHIBIT "A"

    x _____
            HECTOR MARTINEZ

DATED: 2/28/2012

### CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA
COUNTY            S.S.

    On 2/28/12 before me, BLANCA RODRIGUEZ VARGAS, a Notary Public, personally appeared HECTOR MARTINEZ,
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.
WITNESS my hand and official seal

Signature _____ (Seal)

                     BLANCA RODRIGUEZ-VARGAS
                     COMM #1933583
                 NOTARY PUBLIC - CALIFORNIA
                  LOS ANGELES COUNTY
                My Commission Expires April 23, 2015

EXHIBIT "8"

B18 (Official Form 18)(12/11)

# United States Bankruptcy Court
## Central District Of California

21041 Burbank Blvd, Woodland Hills, CA 91367-6603

## DISCHARGE OF DEBTOR

**DEBTOR INFORMATION:**
Laura Ivonne Santoyo

**BANKRUPTCY NO.** 1:12-bk-11125-VK

**CHAPTER** 7

**Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any):** xxx-xx-5414
**Employer Tax-Identification (EIN) No(s).(if any):** N/A
**Debtor Discharge Date:** 6/6/12

**Address:**
9534 Swinton Ave
North Hills, CA 91343

It appearing that the debtor is entitled to a discharge, IT IS ORDERED: The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code). SEE THE BACK OF THIS ORDER FOR EXCEPTIONS AND OTHER IMPORTANT INFORMATION.

BY THE COURT,

Dated: June 6, 2012

**Kathleen J. Campbell**
Clerk of the Court

*\* Set forth all names, including trade names, used by the debtor(s) within the last 8 years. For joint debtors, set forth the last four digits of both social-security numbers or individual taxpayer-identification numbers.*

(Form b18–DIS Rev. 12/2011) VAN–30

28 – 14 / RTO


EXHIBIT "9"

B18 (Official Form 18) Cont.
Rev.(12/11)

# EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

## Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

## Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

## Debts That are Not Discharged.

Some of the common types of debts which are <u>not</u> discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court, under section 523 of the Bankruptcy Code or other applicable law, specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.



**This page is part of your document - DO NOT DISCARD**



## 20110923167

|||||||||||||||||||||||

**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/08/11 AT 11:04AM**

| | | |
|---|---|---|
| FEES: | | 19.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 19.00 |



**L E A D S H E E T**





**SEQ:**
**01**

**DAR - Counter (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E132731

EXHIBIT "20"

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**RECORDING REQUESTED BY**
Jimmy Alvarez                          *
When Recorded Mail To:                 *
 California Sky Premier                 *
 3550 Wilshire Blvd 1725               *
 Los Angeles, Ca 90010                 *
                                        *
Title Order    Escrow                   *
No.            No.                       *(space above for recorder's use only)
*******************************************************************

07/08/2011

*20110923167*

2

## QUITCLAIM DEED

*The undersigned Grantor(s) Declare(s)*

> DOCUMENTARY TRANSFER TAX is $ 0
> Assessor's Parcel No. __5218-019-010__
> __x__ unincorporated area____City of _Los Angeles_
> _____ computed on full value of property conveyed, or
> __x__ computed on full value less value of liens or
> encumbrances remaining at time of sale, and

**FOR A VALUABLE CONSIDERATION**, receipt of which is hereby acknowledged,
 *Hector Martinez, grantor,*
          hereby REMISES, RELEASES AND FOREVER QUITCLAIMS to
*Hector Martinez and Jose Luis Chavez, grantee(s),*
*"THIS IS A BONAFIDE GIFT AND THE GRANTOR RECEIVED NOTHING IN RETURN; R&T 11911."*
the following described real property in the City of Los Angeles ,
County of Los Angeles, State of California. DESCRIBED AS FOLLOWS: *Lot 44, of Tract No. 479, in the city of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 41, page(s) 25, 26 and 27, of maps on file in the office of the county recorder's of said county.*

X _Hector Martinez_ (signature)
_____
 **Hector Martinez**

X _____

Dated: 7-7-2011

### CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF CALIFORNIA
COUNTY OF Los Angeles} S.S.

   On _7-7-2011_ before me, *Jimmy Alvarez*, a Notary Public, personally appeared Hector Martinez , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*Mail Tax Statements to above address:*

JIMMY ALVAREZ
Commission # 1861886
Notary Public - California
Los Angeles County
My Comm. Expires Aug 20, 2013

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Michael H. Meyer, Esq. #82336
Chapter 13 Trustee
Deanna K. Hazelton #202821
Senior Staff Attorney
PO BOX 28950
Fresno, CA  93729-8950
Tel (559) 275-9512
Fax (559) 275-9518

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA

In re:                                    ) **Case No**: 12-18154-B-13K
                                          )
JOSE LAZARO CHAVEZ                        ) **CHAPTER 13**
SUSANA RAMOS                              )
                                          ) **ORDER DISMISSING CASE RE: NOTICE**
                                          ) **OF DEFAULT AND INTENT TO DISMISS**
          Debtor(s)                       ) **CASE**
_____             )

        MICHAEL H. MEYER, Standing Chapter 13 Trustee, properly served a Notice of Default and

Intent to Dismiss Case on Debtor(s).  Debtor(s) was/were required to cure the plan default within (30)

days of the date the Notice was mailed by payment, or file a motion to modify plan and have it heard

and approved within (30) days thereafter, or by requesting a hearing on the Notice and providing

evidence that a default has not occurred. Based on the Declaration in Support of Order Dismissing

Case, and the failure of the Debtor(s) to cure the default by payment or obtaining approval of a

modified plan or provide evidence that the default has not occurred,


**IT IS HEREBY ORDERED** that the case is dismissed pursuant to LBR 3015-1(g).

**Dated:** Jun 24, 2013


W. Richard Lee
United States Bankruptcy Judge

-3-

RECEIVED
June 21, 2013
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0004855436

EXHIBIT " 4 "

Case 2:17-bk-17822-SK   Doc 8   Filed 06/30/17   Entered 06/30/17 10:28:59   Desc
Main Document   Page 77 of 94

Jan 17 2013 10:01AM Regus-Pasadena 6269526201   page 17
Case 2:17-bk-17822-SK   Main Document   Filed 06/30/17   Page 77 of 94   72

RECORDING REQUESTED BY:

WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

Name: Agustin Martinez Resendez
Street
Address: 2158 Broach Avenue

City
State Duarte, CA 91010
& Zip

Title Order No.:                  Escrow No.:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Grant Deed

The undersigned Grantor(s) declare(s)
   DOCUMENTARY TRANSFER TAX IS $ Gift
   [✓] Computed on Full Value of the interest or property conveyed, or
   [ ] Computed on full value less value of liens or encumbrances remaining at time of sale,
   [ ] Unincorporated Area     City of Los Angeles
      Parcel No.: 5218-019-010

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Hector Martinez, A Married man as his sole and separate property

Hereby GRANT(s) to:

Hector Martinez, a married man as his sole and separate property, and Agustin Martinez
Resendez, a single man, to each an individual 50 % interest, as joint tenants

The following described real property in the County of Los Angeles                , State of California

Legal Description
Lot 144 of Tract No. 3479, in the City of Los Angeles, County of Los Angeles, State of California, as per map
recorded in Book 38, Page(s) 48 and 49 of Maps, in the Office of the County Recorder of Said County.

Dated: January 15, 2013

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On January 15, 2013 before me,
Karina Gonzalez , A Notary Public, personally
appeared Hector Martinez

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/their/her authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Karina Gonzalez

Hector Martinez

KARINA GONZALEZ
COMM. #1877093
Notary Public - California
Kern County
My Comm. Expires Jan. 16, 2014

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.

| Agustin Resendez Martinez | 2158 Broach Avenue | Duarte, CA |
|---|---|---|
| Name | Street Address | City & State |

L

EXHIBIT "12"



```
FILED & ENTERED

        MAY 16 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae        DEPUTY CLERK
```

1

2

3

4

5

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10                          **LOS ANGELES DIVISION**

11   In re                                    Case No. 2:13-bk-11209-RK

12     **AGUSTIN MARTINEZ RESENDEZ**          Chapter 7

13

14                                            **ORDER DISMISSING CASE**

15                                            Date:    May 7, 2013
                                              Time:    2:30 p.m.
16                    Debtor.                  Place:   Courtroom 1675
                                                       255 East Temple Street
17                                                     Los Angeles, CA 90012

18           A hearing on the Court's "Order Show Cause" (Docket No. 14) ("OSC") was held

19   on May 7, 2013, before the Honorable Robert N. Kwan in the above-referenced

20        //

21        //

22        //

23

24

25

26

27

28                                    EXHIBIT "B"

1    bankruptcy case, with appearances as noted on the record.

2         For the reasons stated on the record,

3    **IT IS HEREBY ORDERED** that this case is **DISMISSED** for Debtor's failure

4    appear at the hearing on the OSC and Debtor's failure to file copies of Payment Advices

5    (Pay Stubs).

6    **IT IS SO ORDERED.**

7                                    ###

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: May 16, 2013

25                    Robert Kwan
                      United States Bankruptcy Judge

26

27

28

                                    2

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **ORDER DISMISSING CASE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **May 16, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Wesley H Avery (TR)    wamiracle6@yahoo.com, jmoattrustee@gmail.com;C117@ecfcbis.com
- Philip J Giles    ecfcacb@piteduncan.com
- Avi Schild    bk@atlasacq.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

*Debtor*
Agustin Martinez Resendez
6 North First Ave 105
Arcadia, CA 91006

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an ᴀEnteredᴀ stamp, the party lodging the judgment or order will serve a complete copy bearing an ᴀEnteredᴀ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

This page is part of your document - DO NOT DISCARD

## 20131425770





**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/02/13 AT 09:57AM**

| | |
|---|---|
| FEES | |
| TAXES : | |
| OTHER : | 0.00 |
| PAID | |



LEADSHEET



SEQ:
01

DAR - Counter (Upfront Scan)



**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT "4"

RECORDING REQUESTED BY
Hector Martinez

WHEN RECORDED MAIL TO

Hector Martinez
3240 Castalia Ave
Los Angeles CA 90032

Title Order No.
Escrow No.



10/02/2013

*20131425770*

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made this 18TH day of DECEMBER, 2012, between Hector Martinez, herein called TRUSTOR, whose address is 3240 Castalia Ave, Los Angeles, CA 93534, CALIFORNIA TITLE COMPANY, a California Corporation, herein called TRUSTEE, and Miguel Sanchez and Hector Martinez, herein called BENEFICIARY,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in LOS ANGELES County, California, described on "Exhibit A" attached hereto

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

For the Purpose of Securing: 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of 55,000.00 executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, which evidenced by another note (or notes) reciting it is so secured.

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Modoc | 184 | 851 | San Diego | Series 2 | 1961 | 183887 | Solano | 1105 | 182 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Mono | 52 | 429 | San Francisco | A332 | 995 | | Sonoma | 1851 | 689 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Monterey | 2194 | 538 | San Joaquin | 2470 | 311 | | Stanislaus | 1715 | 456 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Napa | 639 | 86 | San Luis Obispo | 1151 | 12 | | Sutter | 572 | 297 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Nevada | 305 | 320 | San Mateo | 4078 | 420 | | Tehama | 401 | 289 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Orange | 5889 | 611 | Santa Barbara | 1878 | 860 | | Trinity | 93 | 366 |
| Contra Costa | 3978 | 47 | Los Angeles | 12055 | 899 | Placer | 895 | 301 | Santa Clara | 5336 | 341 | | Tulare | 2294 | 275 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Plumas | 151 | 5 | Santa Cruz | 1431 | 494 | | Tuolumne | 135 | 47 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Riverside | 3005 | 523 | Sacramento | 4331 | 62 | Shasta | 684 | 528 | Ventura | 2062 | 386 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Sacramento | 4331 | 62 | Sierra | 29 | 335 | | Yolo | 653 | 245 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | San Benito | 271 | 383 | Siskiyou | 468 | 181 | | Yuba | 334 | 486 |
| Humboldt | 657 | 527 | Merced | 1547 | 538 | San Bernardino | 5567 | 61 | | | | | | | |

(which provisions identical in all counties, are printed on the attached page to this form) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that said Trustor will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth

State of California )

County of  LOS ANGELES ) ss.

On 12/18/12 before me, **Kimberly Griffin**           , (notary public) personally appeared ( HECTOR MARTINEZ   ), who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Hector Martinez

Notary Stamp or Seal

KIMBERLY GRIFFIN
Commission # 1510057
Notary Public • California
Los Angeles County
My Comm Expires Aug 26, Jul 2017

**Form provided by CALIFORNIA TITLE COMPANY**

Rev: Jan 2008

### Exhibit 'A'

Lot 44, of Tract No. 479, in the City of Los Angeles County of Los Angeles, State of California, as per map recorded in Book 41, pages(s) 25, 26 and 27, of maps on file in the office of the county recorder's of said county

Form odspa−odspab VAN−21
Rev. 12/09

# United States Bankruptcy Court
## Central District Of California

### 21041 Burbank Blvd, Woodland Hills, CA 91367−6603

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**
Miguel Sanchez

**BANKRUPTCY NO.** 1:13−bk−16108−AA

**CHAPTER** 7

**Last four digits of Social−Security or Individual Taxpayer−Identification (ITIN) No(s)., (if any):** xxx−xx−2181
**Employer Tax−Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 10/7/13

**Address:**
21219 Roscoe Blvd #208
Canoga Park, CA 91304

It appearing that the debtor(s) in the above−captioned case has failed to file all the documents required under F.R.B.P. 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with F.R.B.P. 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1)    The case is dismissed, the automatic stay is vacated and all pending motions and adversary proceedings are moot and dismissed.

2)    Any discharge entered in this case is vacated.

3)    The Court retains jurisdiction on all issues arising under Bankruptcy Code § 110, 329 and 362.

Dated: October 7, 2013

By the Court,

**Kathleen J. Campbell**
Clerk of Court

(Form odspa−odspab VAN−21) Rev. 12/09

**7 / MSI**



EXHIBIT "15"

RECORDING REQUESTED BY
**Maria N. Luna**

WHEN RECORDED MAIL TO

Maria N. Luna
3240 Castalia Ave
Los Angeles CA 90032

Title Order No.
Escrow No.

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

This Deed of Trust, made this 18TH day of DECEMBER, 2012, between Hector Martinez and Miguel Sanchez, herein called TRUSTOR, whose address is 3240 Castalia Ave, Los Angeles, CA 90032, CALIFORNIA TITLE COMPANY, a California Corporation, herein called TRUSTEE, and Maria N. Luna, herein called BENEFICIARY,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in LOS ANGELES County, California, described on "Exhibit A" attached hereto

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

For the Purpose of Securing: 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $15,000.00 executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, which evidenced by another note (or notes) reciting it is so secured.

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Modoc | 184 | 851 | San Diego | | | Solano | 1105 | 182 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Mono | 52 | 429 | Series 2 | 1961 | 183887 | Sonoma | 1851 | 689 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Monterey | 2194 | 538 | San Francisco | A332 | 905 | Stanislaus | 1715 | 456 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Napa | 639 | 86 | San Joaquin | 2470 | 311 | Sutter | 572 | 297 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Nevada | 305 | 320 | San Luis Obispo | 1151 | 12 | Tehama | 401 | 289 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Orange | 5889 | 611 | San Mateo | 4078 | 420 | Trinity | 93 | 366 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Placer | 895 | 301 | Santa Barbara | 1878 | 860 | Tulare | 2294 | 275 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Plumas | 151 | 5 | Santa Clara | 5336 | 341 | Tuolumne | 135 | 47 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Riverside | 3005 | 523 | Santa Cruz | 1431 | 494 | Ventura | 2062 | 386 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Sacramento | 4331 | 62 | Shasta | 684 | 528 | Yolo | 653 | 245 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | San Benito | 271 | 383 | Sierra | 29 | 335 | Yuba | 334 | 486 |
| Humboldt | 657 | 527 | Merced | 1547 | 538 | San Bernardino | 5567 | 61 | Siskiyou | 468 | 181 | | | |

(which provisions identical in all counties, are printed on the attached page to this form) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that said Trustor will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

State of California )

County of  LOS ANGELES ) ss.

On 12/18/2012    before me, **Kimberly Griffin**, (notary public) personally appeared **Hector Martinez and Miguel Sanchez**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

The Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth

_____
Hector Martinez

_____
Miguel Sanchez

**Notary Stamp or Seal**

KIMBERLY GRIFFIN
Commission # 1510057
Notary Public • California
Los Angeles County
My Comm. Expires Jul 27, 2013

Rev: Jan2008

Form provided by CALIFORNIA TITLE COMPANY

EXHIBIT "16"

**Exhibit 'A'**

The following described property in the County of Los Angeles, State of California
Described as follows: Lot: 144 Tract No. 479 Abreviated description: Lot 144 City: region/Cluster: 4/04425 TR#3479 Lot 144
CITY/MUNI/TWP:REGION/CLUSTER:04/04425

APN 5218-019-010

Form odspb–odspab VAN–21)
Rev. 12/09

# United States Bankruptcy Court
## Central District Of California

### 21041 Burbank Blvd, Woodland Hills, CA 91367–6603

## ORDER AND NOTICE OF DISMISSAL FOR
## FAILURE TO FILE SCHEDULES, STATEMENTS AND/OR PLAN

**DEBTOR INFORMATION:**
Maria N Luna

**BANKRUPTCY NO.** 1:13–bk–17494–VK

**CHAPTER** 7

**Last four digits of Social–Security or Individual Taxpayer–Identification (ITIN) No(s)., (if any):** xxx–xx–3124
**Employer Tax–Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 12/18/13

**Address:**
6855 Gloria Ave
Van Nuys, CA 91406

It appearing that the debtor(s) in the above–captioned case has failed to file all the documents required under F.R.B.P. 1007 or 3015(b) within 14 days after the filing of the petition and no motion for an order extending the time to file the required documents has been timely filed in accordance with F.R.B.P. 1007(a)(5) or 3015(b),

IT IS HEREBY ORDERED THAT:

1)    The case is dismissed.

2)    The automatic stay is vacated.

3)    Any discharge entered in this case is vacated.

4)    The Court retains jurisdiction on all issues arising under Bankruptcy Code § 110, 329 and 362.

Dated: December 18, 2013

By the Court,

**Kathleen J. Campbell**
Clerk of Court

(Form odspb–odspab VAN–21) Rev. 12/09

**7 / MSI**


EXHIBIT "17"

RECORDING REQUESTED BY
Hector Martinez And Maria N. Luna

WHEN RECORDED MAIL TO
AND MAIL TAX STATEMENTS TO

Hector Martinez and Maria N. Luna
3240 Castalia Ave.
Los Angeles CA 90032

Title Order No.
Escrow No.

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S):
DOCUMENTARY TRANSFER TAX is $0.00          CITY TAX is  $0.00
☒ computed on the full value of the property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at the time of sale,
☐ Unincorporated area  ☒ City of Los Angeles, and

"This is a bonafide gift and the grantor received nothing in return, R & T 11911"

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Hector Martinez, a married man, Miguel Sanchez ar unmarried man and
Maria N. Luna an unmarried Woman

hereby GRANT(S) to

Hector Martinez a married man as his sole and separated property and Francisco Valdez an unmarried Man

the following described real property in the city of Los Angeles, County of Los Angeles, State of California:

Legal Description Attached Hereto As Exhibit "A" And Made A Part Hereof

Also Known As : 3240 Castalia Ave Los Angeles CA 90032

A.P.N. 5218-019-010

Dated: September 17, 2013

_____
Hector Martinez

_____
Miguel Sanchez

_____
Maria N. Luna

State of California )
County of  Los Angeles  )ss:

On 09/17/2013 before me, Pedro Rodriguez Heredia,

Notary Public(notary name), personally appeared
HECTOR MARTINEZ , MIGUEL SANCHEZ
MARIA N. LUNA
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
(Seal)

Notary Stamp or Seal



PEDRO RODRIGUEZ HEREDIA
Comm. No. 1945395
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. July 24, 2015
CMD-1

Mail Tax Statemer ts as Directed Above
Form provi          COMPANY
Jan:2008

EXHIBIT " 8 "

FORM CACB (od13fr VAN-158)
(01/2010)

# United States Bankruptcy Court
## Central District Of California

### 255 East Temple Street, Los Angeles, CA 90012

## <u>ORDER AND NOTICE OF DISMISSAL</u>
## <u>ARISING FROM CHAPTER 13 TRUSTEE'S MOTION TO DISMISS</u>
## <u>[11 U.S.C. §§ 1307 AND 109(g)]</u>

**DEBTOR INFORMATION:**
Francisco Valdez

**BANKRUPTCY NO.** 2:14-bk-26524-VZ

**CHAPTER** 13

**Last four digits of Social-Security or Individual Taxpayer-Identification (ITIN) No(s)., (if any):** xxx-xx-0023
**Employer Tax-Identification (EIN) No(s).(if any):** N/A
**Debtor Dismissal Date:** 10/27/14

**Address:**
3275 Greenglade Avenue
Pico Rivera, CA 90660

---

Pursuant to the Chapter 13 Trustee's motion to dismiss ("Motion") and supporting declaration in this case,

IT IS ORDERED that the Motion is granted, and

(1)   debtor's bankruptcy case is dismissed;

(2)   the court retains jurisdiction on all issues arising under Bankruptcy Code Sections 110, 329 and 362; and

(3)   pursuant to Bankruptcy Code Section 109(g), debtor is prohibited from filing any new bankruptcy petition within 180 days of the date of entry of this order.

Dated: October 27, 2014

BY THE COURT,

**Vincent P. Zurzolo**
United States Bankruptcy Judge

(Form od13fr VAN-158) (01/2010)

**16 / HGG**


EXHIBIT "9"

RECORDING REQUESTED BY:

WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENT TO:

Name: HECTOR MARTINEZ

Street
Address: 3240 CASTALIA AVE

City
State LOS ANGELES, CA 90032
& Zip



Title Order No.: _____ Escrow No.: _____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Grant Deed

The undersigned Grantor(s) declare(s)

DOCUMENTARY TRANSFER TAX IS $ 0
- [✓] Computed on Full Value of the interest or property conveyed, or
- [ ] Computed on full value less value of liens or encumbrances remaining at time of sale,
- [✓] Unincorporated Area  City of LOS ANGELES
  Parcel No.: 5218-019-010

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
HECTOR MARTINEZ

Hereby GRANT(s) to:

HECTOR MARTINEZ  AND JUAN PEREZ

The following described real property in the County of LOS ANGELES _____, State of California
LOT 144 OF TRACT 3479, IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP
RECORDED IN BOOK 38, PAGES 48 AND 49 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.  "THIS IS A BONIFIDE GIFT AND GRANTOR RECEIVED NOTHING IN RETURN R&T 11911"

Dated: 12/14/2014

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES                                HECTOR MARTINEZ

On DECEMBER 14, 2014 _____ before me, _____
LIDIA MARTELL _____, A Notary Public, personally
appeared HECTOR MARTINEZ _____

who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in
his/their/her authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

LIDIA MARTELL
Commission # 2039188
Notary Public - California
Los Angeles County
My Comm. Expires Aug 27, 2017

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE.
SAME AS ABOVE

Name _____ Street Address _____ City & State _____



| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Joseph C. Delmotte (SBN 259460)<br>jcdelmotte@piteduncan.com<br>Megan E. Lees (SBN 277805)<br>mlees@piteduncan.com<br>**PITE DUNCAN, LLP**<br>4375 Jutland Drive, Suite 200<br>P.O. Box 17933<br>San Diego, CA 92177-0933<br>Telephone: (858) 750-7600<br>Facsimile: (619) 590-1385 | **FILED & ENTERED**<br><br>MAY 21 2015<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY may        DEPUTY CLERK |

☒ Attorney for Movant
☐ Movant appearing without an attorney

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>JUAN PEREZ DBA CALFRED TRUST DBA WILTOP PROPERTIES, | CASE NO.: 2:14-bk-33495-SK<br>CHAPTER: 7 |
|---|---|
| | **ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (REAL PROPERTY)** |
| | DATE:    May 20, 2015<br>TIME:    8:30 a.m.<br>COURTROOM: 1575<br>PLACE:  255 E. Temple Street, Los Angeles, CA  90012 |
| Debtor(s). | |

**Movant:** Bank of America, N.A.

1. The Motion was:    ☐ Opposed    ☒ Unopposed    ☐ Settled by stipulation

2. The Motion affects the following real property (Property):

   *Street address:*      <u>3240 Castalia Avenue</u>
   *Unit/suite number:*    _____
   *City, state, zip code:*  <u>Los Angeles, CA, 90032</u>

   Legal description or document recording number (including county of recording):
   20071503463, Los Angeles County of California

   ☐ See attached page.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

EXHIBIT "2"

3.  The Motion is granted under:

    a.  ☒  11 U.S.C. § 362(d)(1)

    b.  ☐  11 U.S.C. § 362(d)(2)

    c.  ☐  11 U.S.C. § 362(d)(3)

    d.  ☒  11 U.S.C. § 362(d)(4).  The filing of the bankruptcy petition was part of a scheme to hinder, delay, or defraud creditors that involved:

        (1)  ☒  The transfer of all or part ownership of, or other interest in, the Property without the consent of the secured creditor or court approval; and/or

        (2)  ☒  Multiple bankruptcy cases affecting the Property.

        (3)  ☐  The court  ☐ makes  ☐ does not make  ☐ cannot make a finding that the Debtor was involved in this scheme.

        (4)  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, this order shall be binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of this order by the court, except that a debtor in a subsequent case under this title may move for relief from this order based upon changed circumstances or for good cause shown, after notice and a hearing.  Any federal, state or local government unit that accepts notices of interests or liens in real property shall accept any certified copy of this order for indexing and recording.

4.  ☒  As to Movant, its successors, transferees and assigns, the stay of 11 U.S.C. § 362(a) is:

    a.  ☒  Terminated as to the Debtor and the Debtor's bankruptcy estate.

    b.  ☐  Modified or conditioned as set forth in Exhibit _____ to this order.

    c.  ☐  Annulled retroactively to the bankruptcy petition date.  Any postpetition acts taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5.  ☒  Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable nonbankruptcy law, but may not pursue any deficiency claim against the Debtor or property of the estate except by filing a proof of claim pursuant to 11 U.S.C. § 501.

6.  ☐  Movant must not conduct a foreclosure sale of the Property before (date) _____.

7.  ☐  The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Agreement contained within this order.

8.  ☐  In chapter 13 cases, the trustee must not make any further payments on account of Movant's secured claim after entry of this order.  The secured portion of Movant's claim is deemed withdrawn upon entry of this order without prejudice to Movant's right to file an amended unsecured claim for any deficiency.  Absent a stipulation or order to the contrary, Movant must return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this order.

9.  ☐  The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, as to the same terms and conditions as to the Debtor.

10.  ☒  The 14-day stay as provided in FRBP 4001(a)(3) is waived.

11.  This order is binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of the Bankruptcy Code.

12.  Movant, or its agents, may, at its option, offer, provide and enter into a potential forbearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 2                        F 4001-1.RFS.RP.ORDER

13. Upon entry of this order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

14. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy case concerning the Property for a period of 180 days from the hearing of this Motion

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

15. ☐ This order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

16. ☐ This order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

17. ☐ This order is binding and effective in any future bankruptcy case, no matter who the debtor may be

    (a) ☐ without further notice.

    (b) ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

18. ☐ Other (specify):

###

Date: May 21, 2015

                                     Sandra R. Klein
                                 United States Bankruptcy Judge

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                             Page 3                           F 4001-1.RFS.RP.ORDER

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### CIVIL MINUTE ORDER

| **Case Title :** | Jose Chavez and Lorena Aranda De Chavez | **Case No :** 14−32390 − C − 13C |
|---|---|---|
| | | **Date :** 03/01/2016 <br> **Time :** 01:30 |

| **Matter :** | [67] − Motion for Relief from Automatic Stay [BHT−1] Filed by Creditor PROF−2013−S3 Legal Title Trust (Fee Paid $176) (eFilingID: 5720669) (wmim) |
|---|---|

| **Judge :** | Christopher M. Klein | **Courtroom Deputy :** | Sheryl Arnold |
|---|---|---|---|
| **Department :** | C | **Reporter :** | NOT RECORDED |

**APPEARANCES for :**
**Movant(s) :**
**Respondent(s) :**

## CIVIL MINUTE ORDER

Findings of Fact and Conclusions of Law are stated in the Civil Minutes for the hearing.

The Motion for Relief From the Automatic Stay filed by the creditor having been presented to the court, and upon review of the pleadings, evidence, arguments of counsel, and good cause appearing,

**IT IS ORDERED** that the automatic stay provisions of 11 U.S.C. § 362(a) are vacated to allow PROF−2013−S3 Legal Title Trust, by U.S. Bank, N.A., as Legal title Trustee its assignees and/or successors in interest, its agents, representatives, and successors, and trustee under the trust deed, and any other beneficiary or trustee, and their respective agents and successors under any trust deed which is recorded against the property to secure an obligation to exercise any and all rights arising under the promissory note, trust deed, and applicable nonbankruptcy law to conduct a nonjudicial foreclosure sale and for the purchaser at any such sale obtain possession of the real property commonly known as 3240 Castalia Avenue, Los Angeles, California.

No other or additional relief is granted.

Dated: March 02, 2016

_____
United States Bankruptcy Judge



EXHIBIT "2"